## Von Cotzhausen v. Barker.

(Decided June 20, 1913).

### Appeal from Carroll Circuit Court.

1. Contract—Animals—Keep.—In an action to recover on a contract
for the keep of stock, where defendant claimed that the stock
was to be kept on shares, evidence examined and held to sustain
the finding of the chancellor in favor of plaintiff.

2. Pleading—Consolidated Actions—Defect in Pleading Supplied by
Others.—Where several causes of action between the same parties
are consolidated, allegations defectively stated in or totally omit-
ted from one of the pleadings may be supplied by the averments
contained in another, and a defect in the pleadings will be held
to exist only where, considering them as a whole, a material aver-
ment is found to be omitted.

3. Parties—Corporations—Evasion of Corporation Laws.—Where a
corporation, for the purpose of evading the corporation laws of
this state, turns over to its president certain livestock, with power
to make contracts with reference thereto, neither the corporation
nor the president can complain of the fact that the corporation
is not made a party to action against the president to recover for
their keep, where the latter did not ask that the corporation be
made a party.

4. Principal and Agent—Personal Judgment Against Agent—When
Allowed.—Where a corporation, for the purpose of evading the
corporation laws of this state, turns over to its president certain
livestock, with authority to make contracts with reference thereto,
and he, in his individual capacity, contracts for their keep, he
thereby becomes personally liable on the contract.

5. Animals—Agister's Lien—Livestock—Contract for Keep—Time for
Payment Not Fixed.—Where the contract for the keep of live-
stock is terminable at the will of either party, and no time for
payment is fixed, it cannot be said that the keep is due at any
particular time, and a keeper who still has the stock in his pos-
session, is entitled to a lien and to retain the stock until his
claim is paid, although claim covers a period of more than six
months.

6. Parties—Appearance.—One who files a demurrer to a petition and
has an order entered controverting of record the allegations of
the petition, enters his appearance.

7. Action—Several Causes — Consolidation — Submission. — Where plaintiff brings several successive actions for the keep of stock, and it is admitted that he kept the stock during the time covered by the fourth petition, it is not error to consolidate that case with the others, and submit it for judgment, where the only issue between the parties is whether or not the stock were to be kept on the shares or as boarders, and it appears that several hundred pages of proof has been taken on this question and no claim is made by the defendant that he had any additional proof which he could have taken but was not given an opportunity to do so.

McQUOWN & BECKHAM and ARTHUR W. COX for appellant.

A. C. VAN WINKLE for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, R. M. Barker, brought four suits against the defendant, Alfred Von Cotzhausen, to recover certain amounts alleged to be due for the keep of four stallions, thirteen mares and four yearling colts. In the first suit judgment was sought for keep of said stock from April 17, 1909, to November 10, 1910, in the sum of $1,045.50, subject to a credit of $402.50. In the second suit judgment was sought for $200 for keep of a portion of said stock from November 10, 1910, to December 12, 1910. By the third suit judgment was sought for $417.50 for keep of a portion of said stock from December 12, 1910, to February 12, 1911. By the fourth suit judgment was sought for $598.91 for keep of a portion of said stock from February 12, 1911, to August 25, 1911. In each of these suits a lien was asserted on said stock for the amount of their keep under Section 2500, Kentucky Statutes. Demurrers were filed to each of the petitions and overruled. The material averments of the first three named petitions were controverted by answers. After the demurrer to the fourth petition was overruled, the affirmative allegations thereof were controverted of record. The cases were all consolidated and on final hearing plaintiff was given a judgment against defendant for the sum of $1,849.91, with interest, and adjudged a lien on the stock, which the commissioner was directed to sell. From the judgment so entered the defendant appeals.

Briefly stated, the facts are as follows:

: In April, 1908, plaintiff was engaged in farming in Carroll County, Kentucky. The farm belonged to his mother. Defendant was president and general manager of the Progress Blue Ribbon Farm, a Wisconsin corporation. A meeting between plaintiff and defendant took place at Milwaukee. At that time certain contracts were drawn up between defendant and the Richlawn Stock Farm, stated in the contracts to be a co-partnership composed of V. A. Barker, W. E. Fisher and plaintiff. These contracts are of great length and provide for the keeping on shares of stock to be sent by Von Cotzhausen to the Richlawn Stock Farm. There was also a contract by which it was proposed to organize a corporation which should acquire the Richlawn Stock Farm, and the Blue Ribbon Farm should furnish it stallions and mares for breeding purposes. Plaintiff was to be the general manager of the new corporation. Farms and agencies for the sale of the stock thus bought were to be established at Lexington, Memphis and other points. When plaintiff returned home, his mother, Mrs. Barker, and W. E. Fisher, his brother-in-law, declined to ratify the contracts. Plaintiff advised Von Cotzhausen of this fact. In this letter he asked if he could not make some personal deal with defendant. On April 28, 1908, defendant answered plaintiff's letter, and expressed his regret that the negotiations could not be carried out. In April, 1909, defendant came to Lexington. He telegraphed plaintiff that he had directed a car of horses sent to Madison, Indiana, and wished plaintiff to call there for same. Plaintiff claims that he advised defendant that he could not in any event take any more than four of the horses on the shares, and he would only take these provided, on inspection, they appeared to be the kind that he could use. Plaintiff says that when he went to Madison to inspect the horses he found them in wretched condition, although a letter written about that time to defendant would seem to indicate the contrary. Thereupon plaintiff at once telephoned defendant that he would not take the horses except as boarders. Defendant requested plaintiff to come to Cincinnati and go over the situation with him. He then told defendant the terms upon which he would keep the stock for the time being. Defendant acceded to these terms, although he stated at the time that the stock would be removed from the farm within a short period of time. Thereafter plaintiff repeatedly asked for shipping directions for these horses. On April 23, 1909, de-

fendant wrote plaintiff that he understood that the colts of that year belonged entirely to him free of cost. He claims in this letter that the confusion relative to the shipment was due in whole or in part to defendant's failure to advise him that he would not accept the stock on shares. Thereupon plaintiff wrote defendant that he did not agree to take the stock on shares, and would not keep them on such terms. He then states the terms upon which he was willing to allow the stock to remain on his place, and informs defendant that if he does not wish the stock to remain there, to indicate where he desires the stock shipped. On May 18, 1909, defendant wrote plaintiff that he recalled the conversation they had at Cincinnati, and that while under the present arrangement he was bearing the burden of the keep of the horses, he would try to forget the unpleasant features of the matter and continue his friendly feeling for plaintiff. In this letter he enclosed a check amounting to $104 for the keep of the horses and the expense in connection with them. On May 26, 1909, defendant wrote that he understood that the colts for the present year were to belong to him free of cost. In all of his letters, however, he is still insisting that plaintiff handle the horses on shares or in some way or other. On June 27, 1909, plaintiff again informs defendant that he does not desire to keep the horses on shares. He further tells him that he is ready to ship the horses away unless the terms were satisfactory to defendant, and asks for shipping directions. On July 27, 1909, defendant paid plaintiff $83.95 in part settlement for the board bill of these horses. On November 8, 1909, defendant sent an additional check for the keep of the horses up to November 3rd, amounting to $112.

Defendant, in his testimony, explains the negotiations leading up to the contracts of April, 1908. He says that Barker represented himself as having authority to enter into these contracts. Thereupon the contracts were signed and delivered. He claims that while nothing was done under the lease contracts at the time, he and Barker frequently corresponded with reference thereto. He picked the horses, and Barker prepared for them, and when the horses were finally sent to Barker, they were sent under the terms of the contracts of April, 1908. Defendant further says that not knowing what the provisions of the corporation laws of Kentucky were, he signed the proposed contract on behalf of the Progress Blue Ribbon Farm so that the corpora-

tion would not render itself liable to the Kentucky corporation laws. This fact was well known to Barker. He further claims that when he sent the consignment of horses to Barker he distinctly understood that the horses were consigned under and by virtue of the provisions of the contract of April, 1908, and upon no other terms. He further claims that it was not until Barker actually got possession of the stock that the latter claimed that the stock was at his place upon any other terms. He claims that the sums paid for the keep of the stock were advanced to Barker as a matter of accommodation because Barker had no money. He further claims that Barker knew that the stock belonged to the Progress Blue Ribbon Farm; that the bills were made out against it and actually paid by it. He produces many letters showing that he constantly brought to the attention of Barker the fact that the stock was kept under the original contract, and that Barker was not to charge anything for their keep, but was to take care of the stock on shares.

It will be seen that the evidence as to the terms on which the stock were kept by plaintiff is very conflicting. Plaintiff testifies one way while defendant testifies the other. Notwithstanding their various contentions, the following facts clearly appear: Immediately after receiving the stock plaintiff notified the defendant that he would not accept them on shares. He further stated that if defendant did not like that arrangement to give him shipping directions. No shipping directions were ever given. Thereafter defendant's letters not only show that he knew the stock were being kept as boarders, but knew the rates at which they were being kept. Furthermore, he actually sent plaintiff several checks in payment for their keep. In view of these facts, we see no reason to disturb the finding of the chancellor in favor of plaintiff.

It is insisted that the statute gives a lien only in the event that the contract for the keep of the stock is made with the owner, and that the petitions in two of the cases do not allege that the defendant was the owner of the stock. It appears, however, that the petitions in the other two cases do allege such ownership. As the several causes of action are between the same parties, and were consolidated, the petitions should be read together and considered as one. The allegations defectively stated or totally omitted in one pleading are supplied by

the averments contained in another, and a defect in the
pleadings will be held to exist only when, considering
them as a whole, a material averment is found to be
omitted. Pioneer Fuel Co. v. St. Peter Street Imp. Co.,
64 Minn., 386; Castro v. Whitlock, 15 Tex., 437.

It is further insisted that although the pleadings,
taken as a whole, allege ownership by defendant, yet the
proof utterly fails to show that the defendant was the
owner of the stock in question, but does show that the
Progress Blue Ribbon Farm, a corporation, owned the
stock. It is therefore insisted that it was error not only
to adjudge plaintiff a lien on the stock without making
the Progress Blue Ribbon Farm a party, but also to
render a personal judgment against defendant. De-
fendant himself states, however, that the stock was
turned over to him to make contracts with reference
thereto for the purpose of evading the corporation laws
of Kentucky. Having, for the purpose of evading the
corporation laws of Kentucky, put the stock in defend-
ant's charge, with full power to make contracts with
reference thereto, and having vested him with the ap-
parent ownership of the stock, neither the defendant nor
the corporation will be heard to say that any of the cor-
poration's rights were prejudiced by the failure of the
court to make the corporation a party, when the defend-
ant did not ask that this be done. And having made the
contracts in his own name in order that the corporation
of which he was the president might not subject itself
to any liability under the corporation laws of Kentucky,
and credit having been extended to him in his individual
capacity, he thereby rendered himself personally liable
on the contract.

But it is insisted that the agister's lien given by
Section 2500, Kentucky Statutes, is subject to the laws
and restrictions provided in the case of a landlord's lien
for rent, and that plaintiff has been given a lien for
keep that was due for a longer time than provided by the
statutes in the case of a landlord's lien. In interpret-
ing the landlord lien statutes it has been held that as
between a landlord and other lien-holders the landlord
cannot assert his lien for rent that has been due more
than ninety days. As between the landlord and credi-
tors not lien-holders, he cannot assert his lien for rent
that has been due for more than 120 days. As between
the landlord and the tenant, however, the landlord can-
not assert his lien for rent that has been due for more

than six months. Petrie, &c. v. Randolph, &c., 85 Ky., 351. In the case under consideration, however, the contract for the keep. of the stock was at will. While the stock were to be paid for at a certain rate per month no time for payment was fixed. That being true, it cannot be said that the keep was due at any particular time, or that plaintiff was given a lien for keep that had been due for more than six months. The stock still being in the possession of plaintiff, he had the right to retain the stock until his bill for keep was paid. Sheth v. Brangman, 27 Ky. L. R., 395.

There is no merit in defendant's contention that he was not before the court in the fourth suit that was filed, and that the court erred to his prejudice in consolidating that suit with the others, and submitting the case for judgment. The record shows that he entered his appearance to the fourth suit not only by filing a demurrer thereto, but by having the allegations of the petition controverted of record. It is admitted that plaintiff kept the stock for the time set forth in the fourth petition. The only real issue between the parties was whether they were kept on shares or as boarders. Several hundred pages of proof were taken on this question, and it is not seriously contended that defendant had any additional proof which he could have taken, but was not given an opportunity to take.

Judgment affirmed.